UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

ROBSON FORENSIC, INC.,                        :
                Plaintiff,            :
                          :
      v.                                           :       No.   5:22-cv-1309
                          :
ANTHONY J. SHINSKY and               :
EXIGENT GLOBAL, INC.,                     :
                Defendants.        :

_____

**O P I N I O N**
**Motion for Temporary Restraining Order, ECF No. 4 – Denied**
**Motion for Expedited Discovery, ECF No. 5 – Denied**

**Joseph F. Leeson, Jr.**                                                      **April 22, 2022**
**United States District Judge**

## I.     INTRODUCTION

This matter involves claims by Plaintiff Robson Forensic, Inc. (RFI) against its former employee, Defendant Anthony Shinsky, and his current employer, Defendant Exigent Global, Inc.  RFI asserts that Shinsky breached the terms of a noncompete agreement entered into as part of Shinsky's employment with RFI.  In addition, RFI alleges that both Shinsky and Exigent engaged in the misappropriation of RFI's trade secrets in violation of the Defend Trade Secrets Act (DTSA) and Pennsylvania Uniform Trade Secrets Act (PUTSA).

Along with its Complaint, RFI filed a Motion for Temporary Restraining Order (TRO) and a Motion for Expedited Discovery.  Through its TRO motion, RFI seeks to enjoin Shinsky from violating the terms of the noncompete agreement and enjoin Exigent from employing Shinsky in light of that agreement.

Following a review of RFI's motions, this Court denies both.  This Court concludes that RFI has failed to establish eligibility for either a TRO or expedited discovery.

## II.      FINDINGS OF FACT

The findings of fact as set forth here consist of, in large part, allegations from RFI's

verified Complaint that are not disputed in Defendants' response to the present motion for a

TRO.  *See* Compl., ECF No. 1; Resp. TRO, ECF No. 21.  RFI is a forensic firm that provides

clients with both expert investigative services as well as testimonial services.  *See* Compl. ¶ 30.

Shinsky, an architect by trade, was hired by RFI in 2014.  *See id.* ¶¶ 4, 35. At the time Shinsky

was hired, RFI's standard employment agreement did not include a noncompete provision.  *See*

*id.* ¶¶ 9, 59.  On February 11, 2020, Shinsky signed an addendum to the standard employment

agreement, which contained a noncompete provision.  *See id.* ¶ 59.

In relevant part, the addendum provides that Shinsky

> shall not, directly or indirectly, whether as owner, partner, shareholder, director,
> manager, consultant, agent, employee, co-venturer or otherwise, in any jurisdiction
> where the Company is registered to do business, engage or otherwise participate in
> any business that is, in whole or in part, engaged, or preparing to engage, in the
> Business." The term "Business" is defined in the Addendum as "as of the Last Date
> of Employment, the business of the Company as previously or currently conducted,
> or as planned to be conducted in the future, including, without limitation; forensic
> expert investigations, reports or testimony; expert witness services; expert
> consulting and researching; laboratory services; business processes; directly or
> indirectly developing or marketing services related to the foregoing; and serving as
> an expert, expert witness, expert consultant, forensic expert, forensic investigator,
> or related role, for any attorney, law firm, insurance company, independent
> adjuster, public adjuster, claims adjuster, party/parties, or individual(s) involved in
> litigation, pre-litigation, insurance investigations, insurance disputes, insurance
> claims, or other related matters, or managing, developing, or marketing services
> related to the foregoing

*See id.* ¶ 62.

On March 4, 2022, Shinsky resigned from his position at RFI.  *See id.* ¶ 69.  Based on the

terms of the addendum, his final effective date of employment was April 4, 2022.  *See id.* ¶ 13.

On April 4, 2022, Shinsky advised RFI that he had taken a position with Exigent.  *See id.* ¶ 15.

According to its website, Exigent provides "comprehensive legal outsourcing services." *See id.* ¶ 5.

On April 5, 2022, RFI filed suit in this Court, alleging claims of (1) breach of contract, (2) misappropriation of trade secrets under the DTSA and PUTSA, and (3) tortious interference with a contract. *See id.* Along with its Complaint, RFI filed a Motion for a TRO and a Motion for Expedited Discovery. *See* Mot. TRO, ECF No. 4; Mot. Ex. Disc., ECF No. 5. Following an Order of this Court, *see* ECF No. 7, Defendants filed responses to both of the pending motions. *See* Resp. TRO; Resp. Ex. Disc., ECF No. 20. Thereafter, RFI filed replies in support of its two motions, and Defendants filed a sur-reply. *See* Reply TRO, ECF No. 24; Reply Ex. Disc., ECF No. 25; Sur-Reply TRO, ECF No. 32. On April 13, 2022, this Court held a telephone conference during which the parties presented oral argument on the pending motions.

## III.     LEGAL STANDARDS

### A.     Motion for a Temporary Restraining Order (TRO) – Review of Applicable Law

"The standard for granting a temporary restraining order under Federal Rule of Civil Procedure 65 is the same as that for issuing a preliminary injunction." *See Pileggi v. Aichele*, 843 F. Supp. 2d 584, 592 (E.D. Pa. 2012) (citing *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994)). "A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004); *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994).

"In order to prove irreparable harm, the moving party must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Bioquell, Inc. v. Feinstein*, No. 10-2205, 2011 U.S. Dist. LEXIS 16081, at *15 (E.D. Pa. Feb. 14, 2011) (internal quotations omitted).  "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough." *Sampson v. Murrary*, 415 U.S. 61, 90 (1964) (quoting *Va. Petrol. Jobbers Assn. v. FPC*, 259 F.3d 921, 925 (D.C. Cir. 1958)); *see also Instant Air Freight Co. v. C.F. Air Freight*, *Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) (finding that the plaintiff, who argued that without a preliminary injunction its business will "be completely destroyed, its employees and jobs will be lost and its goodwill and business reputation will be ruined," did not show irreparable harm where facts did not support the harm claimed.  Additionally, "the risk of irreparable harm must not be speculative." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000).  Rather, an assertion of irreparable harm must be based on concrete evidence and cannot be sustained "on the basis of 'bald and conclusory' statements." *Cornette v. Graver*, No. 3:19-cv-219, 2020 WL 4059589, at *24 (W.D. Pa. July 20, 2020) (citing *Brown v. Beard*, No. 8-cv-26, 2008 WL 11344639, at *2 (W.D. Pa. Mar. 5, 2008)); *see also Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (stating the "moving party must make a 'clear showing of *immediate* irreparable harm'" (quoting *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir. 1989) (emphasis added by *Campbell Soup* court))).

"[A] failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." *See In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982).

**B.      Motion for Expedited Discovery – Review of Applicable Law**

The Federal Rules of Civil Procedure contemplate that discovery will begin after the parties' Rule 26(f) meeting and offer no guidance on when it is appropriate for courts to authorize expedited or early discovery.  *See* Fed. R. Civ. P. 26(d)(1).  The Third Circuit Court of Appeals has not announced a standard, but district courts in the Third Circuit have applied two standards for evaluating such requests: (1) a more stringent injunctive relief standard, and (2) a "good cause" standard.  *See Bath Auth., LLC v. Anzzi LLC*, No. 18-00834, 2018 U.S. Dist. LEXIS 179754, at *22 (E.D. Pa. Oct. 19, 2018).  "The prevailing approach in this Circuit is to apply the 'good cause' or reasonableness standard to resolve motions for expedited discovery." *See id.* at *22-23.  This standard "requires the party seeking discovery to show 'good cause' for its motion, such that the request is 'reasonable' in light of the relevant circumstances." *Kone Corp. v. Thyssenkrupp USA, Inc.*, No. 11-465-LPS-CJB, 2011 U.S. Dist. LEXIS 109518, at *10 (D. Del. Sept. 26, 2011).  The court should consider: "(1) the timing and context of the discovery requests, including whether a preliminary injunction hearing has been scheduled; (2) the scope and purpose of the requests; and (3) the nature of the burden to the respondent."  *See id.* at *11. "Where the requests are overly broad and extend beyond the needs of the preliminary injunction, leave should be denied."  *Chubb INA Holdings, Inc. v. Chang*, No. 16-2354 (FLW)(DEA), 2016 U.S. Dist. LEXIS 82225, at *12 (D.N.J. June 24, 2016).

**C.      Standards of Law Applicable to the Individual Claims**

**1.      Claims under The Defend Trade Secrets Act (DTSA) & Pennsylvania Uniform Trade Secrets Act (PUTSA) – Review of Applicable Law**

The DTSA provides the owner of a trade secret a remedy when that trade secret is misappropriated.  *See* 18 U.S.C. 1836(b)(1).  In order to make out a claim under the DTSA, a

plaintiff must show (1) that they own a trade secret and (2) that the defendant misappropriated the trade secret. *See Teva Pharmas. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 674 (E.D. Pa. 2018). Similarly, the PUTSA provides injunctive relief for "actual or threatened misappropriation" of trade secrets. *See* 12 Pa. Stat. § 5303.

Both the DTSA and PUTSA define "trade secret" the same way, providing four factors for putative trade secrets to be evaluated against:

(1) The owner used "reasonable means" to keep the information secret;

(2) The information derives actual or potential "independent economic value" from being secret;

(3) The information is not "readily ascertainable by proper means"; and

(4) Others, who cannot access the information, would derive "economic value from its disclosure or use." *See Teva Pharmas.*, 291 F. Supp. 3d at 675 (citing 18 U.S.C. § 1839(3)).

A plaintiff must identify the trade secret with enough particularity so "as to separate the trade secret from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade." *See Advanced Fluid Sys., Inc. v. Huber*, 381 F. Supp. 3d 362, 386 (M.D. Pa. 2019) (citing *Dow Chem. Can., Inc. v. HRD Corp.*, 909 F. Supp. 2d 340 (D. Del. 2012); *Synygy, Inc. v. ZS Assocs.*, No. 07-3536, 2013 WL 3716518, at *2 (E.D. Pa. July 15, 2013)). Generally, "vague references to products and information will not suffice." *See id.* (citing *Synygy*, 2013 WL 3716518, at *2).

In addition to showing the existence of a trade secret, the claimant must also show that it was misappropriated. The standard for "misappropriation" applicable to the present case is identical under both the DTSA and PUTSA. *See* 18 U.S.C. § 1839(5)(B); 12 Pa. Stat. § 5302(2)

(defining "Misappropriation").  Both define misappropriation as including "disclosure or use of a trade secret of another without express or implied consent by a person who . . . used improper means to acquire knowledge of the trade secret."  18 U.S.C. § 1839(5)(B); 12 Pa. Stat. § 5302(2) (defining "Misappropriation").

### 2.	Breach of a Noncompete Provision – Review of Applicable Law

A breach of contract claim under Pennsylvania law requires the claimant to show three elements:

(1) "the existence of a contract, including its essential terms;"

(2) "a breach of a duty imposed by the contract;" and

(3) "resultant damages."

*Udodi v. Stern*, 438 F. Supp. 3d 293, 299 (E.D. Pa. 2020) (quoting *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003)).

"Pennsylvania law generally disfavors restrictive covenants in the employment context, and they are only valid and enforceable if certain requirements are satisfied."  *Ricoh USA, Inc. v. Bailon*, 419 F. Supp. 3d 871, 875–76 (E.D. Pa. 2019) (citing *Socko v. Mid-Atlantic Sys. of CPA, Inc.*, 126 A.3d 1266, 1274 (Pa. 2015)).  Among other requirements, "the restrictions imposed must be reasonably limited in duration and geographic extent, and the restrictions must be designed to protect the legitimate interests of the employer."  *See id.* (citing *Socko*, 126 A.3d at 1274)).  With the respect to the geographic scope, "some courts have upheld covenants with nationwide territorial scopes . . . where the employee *actually serviced* a nationwide market."  *See Coventry First, LLC v. Ingrassia*, No. Civ. A. 05-2802, 2005 WL 1625042, at *9 (E.D. Pa. July 11, 2005) (emphasis in original) (citing *Volunteer Fireman's Ins. Servs., Inc v. Cigna Prop. &. Cas. Ins. Agency*, 693 A.2d 1330, 1338 (Pa. Super. Ct. 1997)).

Where the noncompete agreement is entered into following the start of the term of

employment, it is enforceable "only if the employee receives new and valuable consideration—

that is, some corresponding benefit or favorable change in employment status." *See Ricoh*, 419

F. Supp. 3d at 876 (citing *Socko*, 126 A.3d at 1275).  "New consideration can be in the form of,

inter alia, a promotion or a change to a compensation package." *Id.* (citing *Socko*, 126 A.3d at

1275).  "[T]he mere continuation of the employment relationship at the time of entering into the

restrictive covenant is insufficient to serve as consideration for the new covenant." *Id.* (citing

*Socko*, 126 A.3d at 1275).

## IV.   TRO ANALYSIS

In order to establish cause for the issuance of a TRO, RFI must first establish (1) that it is

likely to succeed on the merits of at least one of its claims, and (2) that it will clearly suffer

immediate and irreparable harm in the absence of an injunction.  After a review of the evidence

presented by both sides, this Court concludes that RFI has failed to carry its burden to establish

that it is likely to succeed on the merits of its claims or that it will clearly suffer immediate and

irreparable harm.  Accordingly, RFI's motion for the issuance of a TRO is denied.

### A.      Likelihood of Success on the Merits

In its Complaint, RFI asserts four claims for relief:  (1) violation of the DTSA (2)

violation of the PUTSA, (3) breach of contract, and (4) tortious interference with contractual

relations.  Accordingly, this Court reviews the likelihood that RFI will succeed on the merits of

any of these four claims.  With respect to RFI's claims under the DTSA and PUTSA, this Court

concludes that RFI has failed to show a likelihood of success insofar as RFI has failed to show

that any claimed trade secret was misappropriated.  With respect to RFI's breach of contract and

tortious interference claims, this Court concludes that RFI has not shown a likelihood of success

of sustaining the subject noncompete agreement.

### 1.      Claims under the DTSA and PUTSA

To state a claim for misappropriation of a trade secret under the DTSA or PUTSA, RFI

must first set forth a protectable trade secret.  *See Teva Pharmas.*, 291 F. Supp. 3d at 675.  While

the full scope of protectable trade secrets is often developed through discovery, a plaintiff

asserting DTSA and PUTSA claims must, at a minimum, identify a trade secret with enough

particularity so "as to separate trade secret from matters of general knowledge in the trade or of

special knowledge of persons skilled in the trade."  *See Huber*, 381 F. Supp. 3d at 386.

In its motion, RFI lists the following items of information as its trade secrets: (1) RFI's

methods regarding case investigation and analysis; (2) its recruiting process, (3) its financial

data, (4) its customer lists; and (5) its analytics regarding growth.  *See* Mot. TRO 14.  Some of

this information, although vaguely described, is widely recognized as protectible trade secrets.

*See, e.g., Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 706 (E.D. Pa. 2014) ("Courts

have found trade secrets to include certain business and marketing information including the

costing and pricing information of an employer's product or services, an employer's business

plans, marketing strategies, and financial projections and the terms of specific customer accounts

including contract expiration dates and revenues generated." (quoting *Youtie v. Macy's Retail

Holding, Inc.*, 653 F. Supp. 3d 612, 621 (E.D. Pa. 2009))).  Assuming RFI has set forth at least

one protectible trade secret, RFI must next establish that it is likely to succeed on the issue of

whether Defendants misappropriated the trade secrets or threatened to misappropriate the same.

Here, RFI has failed to establish any actual or threatened misappropriation under the

DTSA or PUTSA.  Under both statutes, misappropriation includes "disclosure" or "use" of the

trade secret, done without express or implied consent. *See* 18 U.S.C. § 1839(5)(B); 12 Pa. Stat. § 5302(2). RFI's purported belief that "both Shinsky and Exigent have already misappropriated [RFI's] trade secrets and confidential information," without more, does not carry its burden. *See* Mot. TRO 17. Nor does RFI's general assertion that Exigent is conspiring to steal RFI's trade secrets establish misappropriation of any trade secret.[1] *See id.*

Through the declarations, briefing, and oral argument, only one particular claimed trade secret is discussed in any detail. *See, e.g.*, Eckhardt Supp. Declr. ¶¶ 13-14. In particular, RFI claims that Shinsky received specialized training during his work at RFI that represents RFI's trade secret. *See id.* To the extent Shinsky were to use this specialized training at Exigent, RFI argues it would suffer irreparable harm. By way of example, RFI points to training that Shinsky received regarding the use of a "slip and fall" device, which is used by experts to determine whether a given surface was unreasonably slippery. *See* Eckhardt Supp. Declr. ¶ 13. RFI avers that Shinsky was provided "several days of training" on RFI's "own slip and fall devices." *See id.*

---

[1]     This Court also finds unpersuasive RFI's arguments of misappropriation that are founded upon conduct that occurred years prior to the instant case and which involved individuals other than Shinsky. In particular, RFI points to an email sent from RFI employee Paul Guisado in September of 2019, in which Guisado invited "someone else" to edit a spreadsheet entitled "Exigent Forensic Division – Business Operations Budget." *See* Reply TRO at Ex. 1 ("Eckhardt Supp. Declr.") ¶ 75, ECF No. 24-1. RFI does not indicate what information the spreadsheet contained or who it was shared to, which prevents this Court from analyzing the information protectability as a trade secret. Moreover, it is unclear how an *RFI employee's* possession of a spreadsheet entitled "Exigent Forensic Division – Business Operations Budget" amounts to *Exigent's* misappropriation of an RFI trade secret. In another alleged incident, which involved former RFI employee Don Decker, RFI suggests that "the only logical conclusion that can be drawn from Mr. Decker's activity is that he was obtaining . . . information to be used in his new role with Exigent." *See id.* ¶ 76. Notwithstanding, this Court finds these instances unpersuasive in its review of the instant matters involving Shinsky.

Notwithstanding, RFI's argument is unavailing.  Shinsky avers in his competing affidavit, that RFI did not produce the subject slip and fall device.[2]  *See* Sur-Reply TRO at Ex. 5 ("Shinsky 2d. Declr.") ¶ 5, ECF No. 32.  Specifically, Shinsky indicates that the training and certification process for use of the slip and fall device is created and conducted by the manufacturer of the device, not RFI itself.  *See id.*  To the extent these devices are commercially available, RFI has failed to separate any training it provided Shinsky on the use of this device from that which is otherwise widely available.  Moreover, even if RFI could establish that the training it provided to Shinsky on the device was protectable, it has failed to establish that Shinsky misappropriated that trade secret.

Finally, this Court is unpersuaded by RFI's arguments asking this Court to assume misappropriation based on an apparent pattern of conduct by Exigent.  In particular, RFI argues that Exigent's hiring of former RFI employees is evidence that Exigent is out to acquire RFI's "proprietary methods, techniques, training, and know-how."  *See* Reply TRO 9. Notwithstanding, RFI provides no evidence, beyond its own belief, that Exigent hired any former RFI employee for the purpose of obtaining RFI's trade secrets.  Having weighed the competing declarations, this Court concludes that RFI has failed to carry its burden to show that it is likely to succeed on the issue of Defendants' misappropriation of RFI's trade secrets.  Accordingly, its request for a TRO is denied.

---

[2]     RFI's references to the device do not clearly indicate who designed or manufactured it. At one juncture, RFI notes that users of these devices must undergo "training and testing to be certified by the manufacturer."  *See* Eckhardt Supp. Declr. ¶ 13.  In another averment, however, RFI refers to the devices as RFI's "own slip test devices."  *See id.*  Accordingly, it is unclear from its declarations whether RFI intends to assert that it designed and manufactured the device.

### 2.       Breach of Contract and Tortious Interference Claims

RFI also asserts claims for breach of contract against Shinsky and tortious interference with contractual relations against Exigent.  Specifically, RFI claims that Shinsky breached the terms of the noncompete addendum that he signed with RFI by accepting employment with Exigent.  Because the agreement was signed during Shinsky's term of employment, it must be supported by new and valuable consideration.  In addition, the agreement itself must be reasonable in the scope of restricted work, the time for which it is in force, and the geographic region in which certain work is prohibited.  Having reviewed the agreement, this Court concludes that RFI has failed to show a likelihood of success on the merits of its breach of contract claim.  First, this Court finds that it is unlikely that RFI will succeed on the issue of whether the contract was supported by new and valuable consideration.  In addition, even if this Court assumes consideration existed, it is unlikely that RFI will succeed in showing that it is reasonable in scope, time, and geography.

### a.       New and Valuable Consideration

Pennsylvania law requires that noncompete agreements entered into once the employment relationship has already begun be supported by new and valuable consideration. *See Ricoh*, 419 F. Supp. 3d at 876 (citing *Socko*, 126 A.3d at 1275).  This consideration may take the form of, among other things, a promotion or change in compensation.  *See id.*  Here, RFI claims that Shinsky received a bonus, specialized training, and a promotion in consideration for signing the addendum.  However, as the addendum itself bears out, RFI is unlikely to prevail on the issue of whether Shinsky received new and valuable consideration for signing the agreement.

As the court noted in *Ricoh*, "where a claim is predicated on a written instrument that is attached as an exhibit to the complaint, the written instrument will control and courts are not

required to accept as true any contradictory allegations in the complaint." *See Ricoh*, 419 F. Supp. 3d at 876 (citing *ULC Oil & Gas Field Servs. v. EXCO Res. (PA), LLC*, No. 14-72, 2014 WL 6607280, at *5 (W.D. Pa. Nov. 19, 2014)). Here, RFI's breach of contract claim is predicated on the written noncompete agreement, which it attaches to the Complaint. Accordingly, as did the Court in *Ricoh*, this Court reviews the written agreement for evidence of new and valuable consideration.

In its opening paragraph, the addendum indicates that it was entered into in exchange for "additional specialized training, continued at-will employment, access to and use of the Company's Proprietary Information during [] employment, and monetary consideration in the amount of $100.00 . . . ." *See* Compl. at Ex. B, pg. 1 ("Addendum"), ECF No. 1-5. Despite RFI's representation that Shinsky also received a promotion as part of the consideration for signing the agreement, nowhere does the agreement itself indicate that Shinsky received a promotion as part of the consideration for signing the agreement.[3] Accordingly, this Court looks to the remaining two categories of claimed consideration to sustain the agreement.

Turning next to the $100 bonus, this Court finds that RFI is unlikely to succeed on its claim that such constitutes new and valuable consideration to support the entry of the noncompete agreement. Specifically, as courts in this District have recently recognized, consideration may include "a promotion, a change from part-time to fulltime employment, or even a change to a compensation *package of bonuses*, insurance and severance benefit." *See, e.g.*, *Asset Planning Servs. LTD. v. Halvorsen*, Civ A. No. 21-2021, 2022 WL 1104060, at *6

---

[3]     Indeed, in his declaration, Shinsky indicates that he was not promoted until the end of February, despite signing the agreement on February 11, 2020. *See* Shinsky Declr. ¶ 48. Moreover, Shinsky avers that he was unaware that RFI viewed the addendum and his promotion as correlated until he read the Complaint in this matter. *See id.*

(E.D. Pa. Apr. 13, 2022) (emphasis added) (citing *Socko*, 126 A.3d at 1275).  Accordingly, a *change* in employee's *bonus package* or a promotion itself may be sufficient consideration to sustain a noncompete agreement.  *See id.*  The case law that RFI cites in its motion suggest as much.  *See McCarl's Servs., Inc. v. Dargenzio*, No. 302 WDA 2020, 2021 WL 733557, at *10 (Pa. Super. Ct. Feb. 25, 2021) (finding promotion at the time of signing, salary increase of $7,000 annually, and increased managerial responsibilities constituted sufficient consideration for noncompete agreement); *Fancy Fox LLC v. Hanchey*, No. 1277 WDA 2017, 2018 WL 2126288, *5 (Pa. Super. Ct. May 9, 2018) (finding salary increase of $100 *per week* and transition from 1099 contractor to a W-2 employee constituted new and valuable consideration sufficient to sustain noncompete agreement).

In both *McCarl's* and *Fancy Fox*, the consideration offered in exchange for the entry of the noncompete agreement resulted in changes in the employee's compensation amount or structure.  *See McCarl's*, 2021 WL 733557, at *10 (involving change in compensation amounting to $7,000 annually); *Fancy Fox*, 2018 WL 2116288, at *5 (involving change in compensation of approximately $5,200 annually and change in structure of compensation).  In this instance, the noncompete agreement does not suggest that either Shinsky experienced a change in compensation or bonus packages.  Rather, unlike the employees in *McCarl's* and *Fancy Fox*, Shinsky was only offered a one-time payment of $100 for signing the agreement.  According to the agreement, neither Shinsky's salary nor annual bonus amount changed as a result of his signing the agreement.[4]  Thus, under the prevailing law governing the scope of new

---

[4]      Of note, RFI alleges in its Complaint that Shinsky was well-compensated for his work with RFI.  *See* Compl. ¶ 44.  If true, this fact further highlights the inadequacy of a one-time payment of $100 in exchange for an agreement to abstain from certain work for one year nationwide.

and valuable consideration in Pennsylvania, it is unlikely that RFI would succeed in its assertion that the $100 constituted new and valuable consideration for the noncompete agreement.

Finally, RFI asserts that Shinsky was provided consideration in the form of specialized training.  As an initial matter, this sort of consideration was not recognized by the Pennsylvania Supreme Court in its decision in *Socko*.  *See Socko*, 126 A.3d 1266 (noting "promotion, a change from part-time to full-time employment, or even a change to a compensation package of bonuses, insurance benefits, or severance benefits" may constitute adequate consideration).  Accordingly, specialized training, on its own, is not explicitly recognized as a form of consideration sufficient to support the entry of a post-employment restrictive covenant under Pennsylvania law.[5] Notwithstanding, even assuming that training may constitute consideration, RFI has failed to establish that the training it provided to Shinsky was new or valuable.  Foremost, it is unclear from the text of the agreement whether the training in this instance was "new."  The agreement broadly indicates that Shinsky will "have access to specialized training modules on the Company's proprietary process and methods for commercial success."  *See* Addendum ¶ 9. However, neither RFI's briefing nor its declarations venture to describe the sort of training offered or how it represented a new and valuable benefit to Shinsky.  Moreover, Shinsky, in his declaration, denies ever receiving specialized training in connection with his signature of the

---

[5]    While at least one case from this District has acknowledged that specialized training may constitute consideration, that court's conclusion relied on law from outside of the relevant jurisdiction.  *In Sysco v. Philadelphia*, the court listed four types of possible consideration, including specialized training.  *See* 525 F. Supp. 3d 582, 576 (E.D. Pa. 2021) (citing *In re Verdi*, 244 B.R. 314, 324 (Bankr. E.D. Pa. 2000)).  However, the bankruptcy matter that *Sysco* cites for that proposition did not draw it from Pennsylvania case law.  Rather, the bankruptcy court cited opinions from Wyoming, Minnesota, and Missouri state courts in reaching the conclusion that training may be consideration for entry of a restrictive covenant.  *See id.* (collecting cases). Accordingly, despite *Sysco*'s statement of the law, it is unclear whether Pennsylvania actually recognizes specialized training as new and valuable consideration sufficient to support the entry of a post-employment noncompete agreement.

noncompete agreement.  *See* Resp. TRO at Ex. A ("Shinsky Declr.") ¶ 19, ECF No. 21-1.

Having weighed the declarations of both sides, this Court concludes that RFI has failed to

establish that any such training was provided or that it was otherwise new and valuable to

Shinsky.  Accordingly, RFI has failed to establish that it is likely to succeed on the merits of this

claim.  Thus, RFI's motion for a TRO is denied.

        **b.**     **Reasonableness of Scope**

Pennsylvania requires that all noncompete agreements be reasonable in three areas: (1)

the scope of restricted work, (2) the length of the restricted period, and (3) the geographic area in

which the employee may not engage in the restricted work.[6]  *Ricoh*, 419 F. Supp. 3d at 876

(citing *Socko*, 126 A.3d at 1274).  Specifically, with respect to geographic scope, courts in

Pennsylvania are reluctant to uphold noncompete agreements that restrict an employee's ability

to work beyond the market that the employee actually serviced.  *Conventry First*, 2005 WL

1625042, at * 9 (citing *Volunteer Fireman's Ins.*, 693 A.2d at 1338).  Here, RFI has failed to

show that it is likely to succeed on its claim that the agreement is reasonable in terms of its

geographic scope.

Based on the arguments that RFI presented both in brief and oral form, it is apparent that

RFI reads the noncompete agreement as having a national scope.[7]  Accordingly, by RFI's

---

[6]     Defendants do not dispute the reasonableness of the one-year temporal scope of the
agreement.  Accordingly, the Court does not focus on this factor.

[7]     By its terms, the agreement prohibits certain employment actions in "any jurisdiction
where [RFI] is registered to do business."  While RFI does not provide a list of the jurisdictions
in which it is registered to do business with any of its filings, RFI indicates in its reply brief that
"Shinsky's responsibilities were national in scope."  *See* Reply 7; *see also id.* at 8 ("Because
Shinsky holds architecture licenses in jurisdictions across the country[], and due to the threat
posed if Exigent is able to leverage Shinsky's specialized knowledge of Robson's business, the
geographic scope of the non-competition covenant is reasonable to protect Robson's legitimate
business interests.")  In response to a question posed by this Court during oral argument, counsel
for RFI indicated its belief that the agreement was national in scope.

reading, the agreement would prohibit Shinsky from engaging in the enumerated employment actions, for one year following the conclusion of his employment with RFI, anywhere in the nation.  However, the evidence presented by both parties does not bear out that Shinsky serviced a national market.  While RFI's declarations note that Shinsky holds architecture licenses in 18 jurisdictions across the country, RFI fails to provide an accounting of the jurisdictions in which Shinsky actually performed services on behalf of clients of RFI.  *See* Eckhardt Supp. Declr. ¶ 16. In his own declaration, Shinsky asserts that across approximately 400 cases that he worked on as an RFI employee, fewer than five were handled outside of Washington D.C., Maryland, Virginia, and Pennsylvania.  *See* Shinsky Declr. ¶ 53.  Shinsky avers that the five cases that he worked on outside of that region involved investigations that took place in New Orleans, Louisiana.  *See id.* ¶ 55.  While RFI disagrees with this assertion, it points exclusively to Shinsky's licensure as the only evidence that he worked cases nationwide.  *See* Eckhardt Supp. Declr. ¶ 16.  RFI did not present any competing evidence of the locations in which Shinsky actually worked.

Based on the information available in the competing declarations before this Court, RFI is unlikely to succeed in its effort to sustain the national scope of the agreement.  As this Court noted, Pennsylvania disfavors nationwide geographic scopes in noncompete agreements, unless the employee at issue actually serviced a national market.  Here, based on the evidence available, Shinsky's practice with RFI was largely restricted to Washington D.C., Maryland, Pennsylvania, and Virginia, with the exception of a handful of cases in Louisiana.  The market that Shinsky serviced is incongruent with the nationwide scope contemplated by the noncompete agreement. For this reason, this Court finds that RFI is unlikely to succeed on the merits of its breach of contract claim.  Accordingly, RFI's motion for a TRO is denied.

### c.      Tortious Interference Claim

In Count IV of its Complaint, RFI alleges that Exigent tortiously interfered with contractual relations between Shinsky and RFI.  Notwithstanding, as this Court explained immediately above, RFI has failed to show that it is likely to succeed in sustaining the noncompete agreement between it and Shinsky.  In claims involving tortious interference with a contract, "Pennsylvania [law] places the burden on the plaintiff . . . to prove the absence of any privilege or justification on the part of the defendant."  *See Ricoh*, 419 F. Supp. 3d at 877 (quoting *Buskirk v. Apollo Metals*, 307 F.3d 160, 172 (3d Cir. 2002)).  Accordingly, because RFI failed to show a likelihood of success on the enforcement of its noncompete agreement, it has similarly failed to show that it is likely that Exigent's competition tortiously interfered with that agreement.  *See id.*  Thus, RFI has not shown that it is likely to succeed on the merits of Count IV, and its motion for a TRO is denied.

### B.      Irreparable Harm

In addition to a likelihood of success on the merits, RFI must also establish irreparable harm.  Specifically, RFI must make a clear showing of immediate, irreparable harm that cannot be compensated monetarily.  *See Campbell Soup Co.*, 977 F.2d at 91.  Here, RFI has failed to make such a showing.

In its motion, RFI simply lists categories of irreparable harm that have been recognized by courts within this Circuit. *See* Mot. TRO 19-20.  However, RFI does little to explain how any of these categories of harm apply to the case at hand.  In addition, the declaration Bartley J. Eckhardt, President and CEO of RFI, similarly fails to establish that any of those categories of harm are imminent in this case.

Through the Eckhardt declaration, RFI claims that Shinsky's employment with Exigent is a "major threat" to RFI's goodwill. *See* Mot. TRO at Ex. C ("Eckhardt Declr.") ¶ 27, ECF No. 4-4. However, mere invocation of the term "goodwill" does not suffice to establish the sort of clear and immediate irreparable harm necessary for the issuance of a TRO. Next, RFI asserts that Shinsky's employment with Exigent is a "direct threat" to RFI's client relationships. *See id.* Like RFI's goodwill invocation, this claim, too, is unsupported. In fact, in the same paragraph, RFI notes that repeat clients frequently seek out *RFI*, not Shinsky individually, for testifying experts. *See id.* Thus, the impact of Shinsky's departure on client relationships is far from clear.

Next, RFI asserts that Shinsky's employment with Exigent "will necessarily draw on the trade secret and confidential information he learned at [RFI]." *See id.* As this Court discussed above, RFI has provided no evidence that Shinsky has misappropriated, or has threatened to misappropriate, trade secrets. Rather, RFI wishes this court to assume that such misappropriation will necessarily occur. However, RFI has failed to provide any evidence to support the probability, let alone immediacy, that any such result will clearly occur.

Finally, RFI asserts that its reputation and employee relationships will be harmed by Shinsky's employment with Exigent. RFI merely invokes the term reputation without saying more, failing entirely to explain how its reputation will be harmed. Accordingly, the harm to RFI's reputation is neither clear nor immediate. Moreover, RFI's appeal to the threat of harm to its employee base is unavailing. In support, RFI cites *Graphic Management Associates, Inc. v. Hyatt*, No. 97-CV-6961, 1998 WL 159035, at *18 (E.D. Pa. Mar. 18, 1998). There, the court noted the proposition that allowing one employee to violate a valid restrictive covenant may encourage others to do the same. *See id.* Notwithstanding, at the time the court cited to that principle, it was no longer analyzing the existence of irreparable harm. *See id.* Rather, having

already concluded that irreparable harm existed based on wholly separate factors, the court

instead considered the negative effect on other employees in its review of the balance of the

equities. *See id.* Accordingly, this Court finds this particular argument from RFI unpersuasive.

In its reply, RFI posits a novel argument for the existence of irreparable harm. Therein, it

argues that "the threat of unbridled continuation of the violation [of a restrictive covenant] and

the resultant incalculable damage to the former employer's business establishes irreparable

harm." *See* Reply TRO 3 (citing *Healthcare Servs. Grp., Inc. v. Fay*, 597 F. App'x 102, 103–04

(3d Cir. 2015) (alteration in original)). Contrary to RFI's reading of this case law, *Fay* does not

indicate that irreparable harm necessarily exists in all cases involving violation of a restrictive

covenant. Rather, it requires both (1) a continuing violation of the covenant, and (2) *a resultant*

*incalculable damage*. *See id.*

This interpretation is confirmed by the analysis conducted by both the Third Circuit in

*Fay* and the Pennsylvania Supreme Court in *John G. Bryant Co. v. Sling Testing & Repair, Inc.*,

369 A.2d 1164, 1167 (Pa. 1977). After setting out the relevant principle, the Third Circuit in *Fay*

did not simply end its analysis by concluding that a restrictive covenant existed between

employee and employer, and thus, irreparable harm must exist. *See Fay*, 597 F. App'x at 103-

04. Rather, the Third Circuit went further, inquiring into the incalculable damage that would

result from the actions of the employees bound by the covenant. *See id.* at 104 (noting

defendant-employees interfered with customer relationships by attending sales meetings

involving customers of their former employer). The same is true of *John G. Bryant*. *See* 369

A.2d at 1167. There, as in *Fay*, the Court inquired beyond the mere existence of the restrictive

covenant, noting it was instead "unwarranted interference with customer relationships that is

unascertainable and not capable of being fully compensated by money damages." *See id.*

Here, RFI's citation to *Fay* does not, on its own, establish that it has suffered irreparable harm. Unlike the employer in *Fay*, RFI has failed to point to any "resultant incalculable damage" connected to Shinsky's employment with Exigent. Instead, it is apparent from RFI's briefing that they believe the existence of the noncompete agreement itself is sufficient to satisfy the irreparable harm element. *See* Reply TRO 3 ("Shinsky's continued employment with Exigent therefore irreparably harms [RFI] absent issuance of injunctive relief *because* the restrictive covenants at issue are valid and enforceable." (emphasis added)). That is simply not the case. RFI has failed to clearly establish that it faces immediate and irreparable injury absent issuance of a TRO. Where a plaintiff fails to establish either that it is likely to succeed on the merits or that it will suffer irreparable harm, the TRO must necessarily be denied. *See In re Arthur Treacher's*, 689 F.2d at 1143. Accordingly, RFI's motion for issuance of a TRO is denied.

## V.     EXPEDITED DISCOVERY ANALYSIS

RFI fails to show good cause for expedited discovery. All of the factors that this Court is to consider weigh against expedited discovery. First, the motion for expedited discovery was filed the same day as the Complaint. Further, based on the decision of the Court as to the TRO, there will be no preliminary injunction hearing scheduled. Second, although RFI claims its request is narrow, it reaches most of the merits of this case. Indeed, the proposed order submitted by RFI permits ten document requests per side and ten interrogatories per side, with responses to be due within just twelve days of service of the requests. Moreover, the order provides for each side to take three depositions. The proposed order in no way limits the scope of this expedited discovery. In essence, RFI is asking for full discovery the same day that it filed its Complaint, and it is providing Defendants approximately thirty days to comply. Finally, the

burden on Defendants is severe.  RFI seeks an order authorizing a total of twenty document requests, twenty interrogatories, and six depositions, all to be concluded within a months' time.

  For these reasons, RFI's request for expedited discovery is denied.

## VI. CONCLUSION

  RFI fails to show a likelihood of success on the merits or that it would clearly suffer immediate and irreparable harm in the absence of the requested TRO.  Accordingly, RFI's motion for a TRO is denied.

  Additionally, RFI has failed to show good cause for expedited discovery.  Therefore, RFI's motion for expedited discovery is denied.

  A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge
